IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANGELA ROYSTER
    *Plaintiff*,

v.                                          Civil Action No. ELH-15-1843

JEFFREY R. GAHLER,
*et al.*
    *Defendants*.

**MEMORANDUM OPINION**

In an Amended Complaint (ECF 5) filed in July 2015, Angela Royster, plaintiff, filed suit

against two defendants: Jeffrey R. Gahler, in his official capacity as Sheriff of Harford County,

and the State of Maryland.  She alleges age discrimination in employment, in violation of the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; hostile and abusive

work environment, in violation of the ADEA; and retaliation, in violation of the ADEA.[1]

Defendants have moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 10),

supported by a memorandum (ECF 10-1) (collectively, "Motion to Dismiss").  Plaintiff opposes

the Motion to Dismiss (ECF 14), supported by a memorandum of law (ECF 14-1) (collectively,

"Opposition"), to which defendants have replied.  ECF 16, "Reply."

After defendants moved to dismiss, plaintiff filed a Motion for Leave to File Second

Amended Complaint.  ECF 12, "Motion to Amend."  She seeks to add a claim against defendants

for age discrimination under Maryland law, pursuant to Md. Code (2009 Repl. Vol., 2011

Supp.), § 20-606 of the State Government Article ("S.G.").  The Motion to Amend is supported

---

[1] Plaintiff initially sued only the "Harford County Sheriff's Office" ("Sheriff's Office").  The Sheriff's Office moved to dismiss (ECF 4, 4-1), but that motion was denied as moot after plaintiff filed her Amended Complaint.  *See* ECF 17.  The Sheriff's Office is not named as a defendant in the Amended Complaint.

by the proposed Second Amended Complaint (ECF 12-1) and a letter from plaintiff's counsel to Nancy Kopp, Maryland Treasurer, dated August 27, 2015.   ECF 12-3, "Letter to Treasurer."   The Letter to Treasurer states that it is intended to provide the Treasurer with notice of plaintiff's suit against defendants, "[p]ursuant to Md. Code Ann., Cts. & Jud. Proc. § 12[.]"   *Id.*   Defendants oppose the Motion to Amend.   ECF 13, "Opposition to Amend."   Plaintiff has filed a reply (ECF 15, "Reply-Motion to Amend"), to which she appended exhibits.   *See* ECF 15-1.

The motions have been fully briefed, and no hearing is necessary to resolve them.   *See* Local Rule 105.6.   For the reasons that follow, I will grant the Motion to Dismiss (ECF 10) as to the State of Maryland; deny the Motion to Dismiss (ECF 10) as to Sheriff Gahler with respect to the claims for prospective injunctive relief in Counts I and III, but otherwise grant the Motion as to Sheriff Gahler, with leave to file a Second Amended Complaint only as to the ADEA hostile work environment claim (Count II), limited to prospective injunctive relief.   And, I will also deny the Motion to Amend (ECF 12).

## I.  Factual Summary

Plaintiff was born in 1970.   ECF 5, ¶ 7.   She began working as a Police Dispatcher in the Harford County Sheriff's Office in the fall of 1995.   ECF 5, ¶¶ 1, 8, 9.[2]   In 1998, she became a "Crime Analyst" (*id.* ¶ 10), and in 2006 she became Crime Analyst Manager.   *Id.* ¶ 11. According to plaintiff, she "completed her job duties in a very professional and satisfactory manner for 15 years."   ECF 5, ¶ 12.   Indeed, plaintiff asserts that Major Dale Stonesifer, her supervisor at the time, informed her that he would "no longer do performance evaluations on

---

[2] Plaintiff's Amended Complaint is imprecise.   She asserts that she "began working with *the Defendant's office* . . . ."   ECF 5, ¶ 1 (emphasis added); *see also* ECF 5, ¶ 8.   However, there are two defendants.   Indeed, throughout the Amended Complaint plaintiff repeatedly refers to "Defendant," without specificity.   *See*, *e.g.*, ECF 5, ¶ 5 ("Defendant changed its attitude towards her.").

her" (ECF 5, ¶ 13), noting: "'It was a waste of time because [she] was doing a great job.'" *Id.* ¶ 14.

However, plaintiff contends that, beginning in 2013, "Defendant changed its attitude towards her." ECF 5, ¶ 15. For the first time in her career, plaintiff received "negative feedback" under Captain Carl Brooks, her new supervisor. ECF 5, ¶ 17. Captain Brooks informed plaintiff that the "employees Plaintiff supervised had issues with Plaintiff and that the employees were afraid to come forward." ECF 5, ¶ 21. However, plaintiff avers that her evaluations suggested she was "an excellent supervisor." *Id.* ¶ 22.

Plaintiff alleges that Colonel Carlevaro[3] made "numerous derogatory comments" about her in the workplace, and asserts that she was called "a 'fat ass' by management." ECF 5, ¶¶ 24, 25. According to plaintiff, "Defendant took no action supporting Plaintiff" and "took no action against the offenders." ECF 5, ¶¶ 26, 27.

In March 2013, plaintiff complained to Major Stonesifer about a hostile work environment. ECF 5, ¶ 28. He encouraged plaintiff to "work together as a united front and work things out." ECF 5, ¶ 30. Plaintiff told Major Stonesifer that "for years [she had] attempted to make suggestions and recommendations" (ECF 5, ¶ 31), such as social media training and software updates. *Id.* ¶¶ 32, 33. Major Stonesifer replied: "'Captain Brooks will be able to help you do that and get it done.'" ECF 5, ¶ 35. According to plaintiff, her requests fell "on deaf ears." ECF 5, ¶ 38.

Also in March 2013, plaintiff met with former Sheriff Jesse Bane (ECF 5, ¶ 59), who told plaintiff that she (plaintiff) "'could not work with Captain Brooks with this behavior'" and "agreed" that "Colonel Carlevaro's comments were inappropriate." ECF 5, ¶¶ 60–61. However, according to plaintiff, "nothing changed" after she met with Sheriff Bane. ECF 5, ¶ 64. Later, in

---

[3] The parties have not provided Colonel Carlevaro's first name.

April 2013, plaintiff "complained about a hostile work environment to Major Christopher Swain (ECF 5, ¶ 62), who informed plaintiff that she "would be under the command of Captain Brooks." *Id.* ¶ 63.

In 2013, Kate Mack, who "was in her mid-20s" (ECF 5, ¶ 41), was hired by the Sheriff's Office to work as a Planning Analyst.  ECF 5, ¶¶ 41–42.  Plaintiff was a member of the panel that interviewed Mack for a position that eventually went to a different candidate.  ECF 5, ¶¶ 43, 44, 52, 53.  However, plaintiff alleges that Mack was hired by Captain Dan Galbraith for another position that "was never posted" and "others on the interview panel were not consulted."  ECF 5, ¶¶ 54–56.  According to plaintiff, the "position was created for Ms. Mack."  ECF 5, ¶ 57.

In July 2013, plaintiff complained to Major Swain about alleged harassment that her co-worker was experiencing.  ECF 5, ¶ 65.  Plaintiff then held a meeting with Major Swain and Captain Brooks to "discuss the discontent the unit had with Captain Brooks."  ECF 5, ¶ 71.  According to plaintiff, Captain Brooks "stood up at the table and pointed at everyone" (*id.* ¶ 74), and called everyone in attendance a "liar."  *Id.* ¶ 75.  Plaintiff avers that she asked Colonel Carlevaro to join the meeting.  ECF 5, ¶ 76.  He allegedly threatened plaintiff and her unit, stating that "if Plaintiff wanted to file a complaint with Internal Affairs, Plaintiff should be aware that he, Colonel Carlevaro was in charge of Internal Affairs."  *Id.* ¶ 79.  Before Carlevaro left the meeting, he stated that "there would be changes."  ECF 5, ¶  83.  Plaintiff contends she was "met with hostility," was barred from speaking with the Sheriff, and was told that future complaints would need to be directed to Major Swain or Colonel Carlevaro.  ECF 5, ¶¶ 84–86.

During the summer of 2014, Major Swain held a meeting with Captain Brooks, Mack, plaintiff, and plaintiff's unit.  ECF 5, ¶¶ 90–92. Plaintiff alleges that Major Swain "belittled the staff" during the meeting, and "only sought opinions from Ms. Mack." ECF 5, ¶¶ 93–94.  When

plaintiff asked why she was not provided with the training she requested (*see* ECF 5, ¶¶ 39, 40) and that Mack was given, Captain Brooks "physically, threatened Plaintiff." *Id.* ¶ 98.  He "got irate and lunged across the table pointing in Plaintiff's face" (*id.* ¶ 99), and "screamed, 'you're pissing me off.'" ECF 5, ¶ 100.

When plaintiff "backed away from the table," she was "ordered to sit down by Captain Brooks" or risk suspension.  ECF 5, ¶¶ 101–102.  Captain Brooks "escorted" Mack out of the meeting.  *Id.* ¶ 103.  Plaintiff avers that she "tried to understand why she was being excluded from all meetings and initiatives regarding the unit" and that after she "voiced concerns" to Captain Brooks he remarked, "'aww are you jealous? This sounds like jealousy to me.'" ECF 5, ¶¶ 104–106.

Colonel Carlevaro retired in 2014 and was replaced by Colonel Ed Hopkins.  ECF 5, ¶¶ 107–108.  Plaintiff shared her concerns with Colonel Hopkins, who stated: "'I hate to say it but this really sounds like a hostile work environment.'" ECF 5, ¶¶ 109–110.  Colonel Hopkins arranged meetings between plaintiff and the Sheriff, and informed plaintiff that the Sheriff wanted to "speak with his command staff before making any decisions."  ECF 5, ¶¶ 111–112.  Plaintiff then learned the Sheriff had decided to "disburse the unit."  ECF 5, ¶ 114.  Later, plaintiff learned that the Sheriff had not met with his entire command staff, and instead only conferred with command staff with whom plaintiff was having problems. ECF 5, ¶¶ 119–120.

Plaintiff was given a new job description (*id.* ¶ 115), in which she was to report to Mack. *Id.* ¶ 116.  The job description required "5 years analysis experience."  ECF 5, ¶ 117.  According to plaintiff, Mack, who was hired in 2013, "had no experience to run the unit."  ECF 5, ¶ 118.  Plaintiff also asserts that Mack did not have the experience required for the promotion she received (*id.* ¶ 132), and that Mack received "higher pay" (*id.* ¶ 133), and a "higher pay grade."

*Id.* ¶ 134.  Plaintiff also avers that "Defendant never even announced the position opening" and, "[h]ad Plaintiff know [sic] about the position, Plaintiff would have applied."  *Id.* ¶¶ 139–140.

In October 2014, in response to plaintiff's complaints about a hostile work environment, she was transferred to a position at a detention center.  ECF 5, ¶ 121.  Plaintiff asserts: "The detention center is a graveyard for soon to be separated employees" (ECF 5, ¶ 122), and her "duty completely changed[.]" ECF 5, ¶ 123. "Plaintiff was no longer in the law enforcement side of the office" and was instead "on the corrections side. . . ."  ECF 5, ¶¶ 123–124.  Rather than conducting "crime analysis work" plaintiff now "gather[ed] information from the detention center."  ECF 5, ¶ 125.  Additionally, Mack, who was then 23 years old, received a promotion to "Crime and Intelligence Analyst Manager."  ECF 5, ¶ 128.  Plaintiff contends Mack was "continually sent to trainings" and "aware of all trainings." ECF 5, ¶¶ 129–130.  Yet, plaintiff's requests for training were denied.  ECF 5, ¶ 131.

Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") on December 4, 2014, and received a "right to sue letter" from the EEOC on May 29, 2015.  ECF 5, ¶¶ 142–143; ECF 5-2 (providing EEOC Notice of Right to Sue).  Plaintiff avers that she has "exhausted all administrative remedies."  ECF 5, ¶ 144.

## II. Discussion

### A.  Motion to Amend

Motions to amend pleadings are governed by Fed. R. Civ. P. 15(a)(1)(B), which permits a party to amend a pleading once "as a matter of course," without leave of court or the consent of opposing parties, if done within 21 days of receipt of a motion filed under Fed. R. Civ. P. 12(b). Further, Rule 15(a)(2) instructs that a court should "freely" grant leave to amend "when justice so requires," and commits the matter to the discretion of the district court.  *See Simmons v.*

*United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).  However, a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."  *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber v. Harvey*, 438 F.3d 404, 426–29 (4th Cir. 2006) (en banc).

As noted, in the Motion to Amend (ECF 12), plaintiff seeks to add an age discrimination claim under Maryland law, pursuant to S.G. § 20-606.  It is part of a statute that is commonly referred to as the Maryland Fair Employment Practices Act ("MFEPA"), S.G. §§ 20-101 *et seq*. The MFEPA "is the state law analogue of Title VII."  *Alexander v. Marriott Int'l, Inc.*, RWT– 09–02402, 2011 WL 1231029, *6 (D. Md. Mar. 29, 2011); *see also Haas v. Lockheed Martin Corp.*, 396 Md. 469, 483 n.8, 914 A.2d 735, 743 n.8 (2007).

In their Opposition to Amend (ECF 13), defendants assert two primary arguments pertaining to futility.  First, they contend that granting the Motion to Amend would be futile because defendants are immune from suit in federal court under Maryland law, pursuant to S.G. § 20-903.  *Id.* at 3.[4]  Second, defendants argue that granting the Motion to Amend would be futile because plaintiff has failed to comply with State statutory requirements that are a condition precedent to suit, under S.G. § 12-106.  ECF 13 at 4, Opposition to Amend.  In particular, defendants allege that plaintiff has "fail[ed] to comply with the mandatory notice requirement in the Maryland Tort Claims Act" ("MTCA"), S.G. § 12-101 *et seq*.  *Id.*

Plaintiff counters that defendants are not immune from suit in federal court under Maryland law.  ECF 15 at 1–2, Reply-Motion to Amend.  In addition, plaintiff asserts that she

---

[4] Defendants "adopt and incorporate" in their Opposition to Amend the arguments set forth in their Motion to Dismiss.  *See* ECF 13 at 1 n.1.  The Opposition to Amend also asserts immunity under Maryland law.  Defendants' assertion of immunity under the Eleventh Amendment is discussed, *infra*.

has "substantially complied with the notice requirement" and has therefore complied with the MTCA.  *Id.*

### 1.  Immunity under Maryland Law

Defendants contend that the MFEPA "does not contemplate the filing of [employment discrimination] actions in the federal courts, nor does it waive the State's Eleventh Amendment immunity in the federal courts."  ECF 13 at 3, Opposition to Amend.  They rely on Title 20 of the State Government Article, entitled "Human Relations."  S.G. § 20-903 contains the State's waiver of sovereign immunity with respect to claims of employment discrimination.  It provides: "The State, its officers and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case *under this title*."  (Emphasis added).  Claiming that the waiver of sovereign immunity in S.G. § 20-903 applies only to cases brought "under this title," defendants argue that the State has waived immunity only as to those cases brought in Maryland courts.  ECF 13 at 3–4, Opposition to Amend.

In support of their position, defendants also point to the language in S.G. § 20-1013(b), a venue provision.  *See* ECF 13 at 3, Opposition to Amend.  S.G. § 20-1013(b) states: "Venue. – A civil action under this section shall be filed in the circuit court for the county where the alleged unlawful employment practice occurred."  According to defendants, this provision requires a civil action under Title 20 to be filed in a Maryland circuit court.

Defendants recognize that I considered the same issue under an earlier version of the Maryland Code.  *See Hartman v. Univ. of Md. at Baltimore*, ELH-10-2041, 2013 WL 6858854 (D. Md. Dec. 20, 2013).  In *Hartman*, I rejected the State's contention.  Defendants now ask me to reconsider my ruling.  I decline to do so.

In *Hartman*, I said, 2013 WL 6858854, at *4–5 (citations omitted):

[The State's] argument suffers from at least two infirmities.  First, the argument's premise is flawed.  It cannot be the case that the cited venue provision "mandates that a civil action brought to enforce § 20-606 be brought in a Maryland circuit court."  The venue provision explicitly applies to all cases brought under Title 20, regardless of whether the government is a defendant.  For example, Title 20 includes prohibitions on discrimination in employment, housing, leasing of commercial property, and places of public accommodation.  If [University of Maryland at Baltimore, *i.e.*, defendant's] interpretation were correct, federal courts would be unable to entertain any of these claims.  But, federal courts in this district have adjudicated countless cases in which plaintiffs asserted state law discrimination claims.  Thus, S.G. § 20-1013(b) is best read not as creating a jurisdictional bar to federal court adjudication of cases under Title 20, but rather as establishing the proper venue for Title 20 cases filed in state court.

Second, examination of other waivers of sovereign immunity in the Maryland Code make clear that the waiver of sovereign immunity in S.G. § 20-903 applies in both state and federal court.  In other contexts, the Maryland legislature explicitly limited its waiver of sovereign immunity to cases filed in state court.  For example, Maryland's waiver of sovereign immunity in tort cases, S.G. § 12-104, provides that "the immunity of the State and of its units is waived as to a tort action, *in a court of the State*, [provided that its liability may not exceed $200,000]."  Likewise, Maryland's waiver of sovereign immunity in contract actions, S.G. § 12-201, provides that "the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, *in a court of the State*, based on a written contract that an official or employee executed for the State . . . ."  Similarly, [in C.J. § 5-522] the legislature has provided that state personnel "are immune from suit *in courts of the State* and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence . . . ."

By contrast, the waiver of sovereign immunity at issue here does not contain any such limitation.  Rather, it simply provides, without qualification, that the State "may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title."  S.G. § 20-903.  The Maryland legislature knows how to limit its waiver of sovereign immunity; it has simply chosen not to do so in the context of discrimination cases.

*Hartman* was decided under the 2009 Replacement Volume of the Maryland Code and the 2011 Supplement.  The Office of the Attorney General represented the defendant in *Hartman*, just as it represents the defendants in this case.  The State's lawyers certainly could have made the Maryland General Assembly aware of an erroneous ruling in *Hartman* concerning sovereign immunity, and may have done so.  In turn, the General Assembly could have clarified, modified, or revised the statutory language in the 2014 Replacement Volume of the Maryland

Code, to coincide more clearly with the State's position in *Hartman*.  It did not do so.  In any

event, I see no basis to revise or alter my ruling in *Hartman*.  *See also Davenport v. Maryland*,

38 F. Supp. 3d 679, 690–91 (D. Md. 2014) (Russell, J.) (concluding that the State of Maryland is

not immune from MFEPA claims in federal court).

## 2. Applicable Maryland Law

Alternatively, defendants posit that granting plaintiff's Motion to Amend would be futile

because plaintiff has failed to comply with the notice requirement under the MTCA, which is a

predicate to filing suit against the State of Maryland.  *See* S.G. §§ 12-106, 12-107, 12-108; ECF

13 at 4–5, Opposition to Amend.  In Reply, plaintiff maintains that she "substantially complied

with the notice requirement by sending the defendant two letters . . . and [that she] certainly put

Defendant on notice by filing a complaint with the EEOC."  ECF 15 at 2, Reply-Motion to

Amend.

The MTCA offers "a limited waiver of sovereign immunity and 'is the sole means by

which the State of Maryland may be sued in tort.'"  *Paulone v. City of Frederick*, 718 F. Supp.

2d 626, 637 (D. Md. 2010) (citation omitted); *see Condon v. Md.-Univ. of Md.*, 332 Md. 481,

492, 632 A.2d 753, 758 (1993); *Mitchell v. Housing Auth. of Baltimore City*, 200 Md. App. 176,

201–202, 26 A.3d 1012, 1027–28 (2011).  Filing a claim with the Treasurer is a "condition

precedent to bringing an action under the MTCA."  *Gray v. Maryland*, 228 F. Supp. 2d 628, 641

(D. Md. 2002) (citing *Haupt v. State*, 340 Md. 462, 667 A.2d 179 (1995) and *Simpson v. Moore*,

323 Md. 215, 592 A.2d 1090, 1091–92 (1991)).

In particular, under S.G. § 12-106(b)(1), "a claimant may not institute an action . . .

unless . . . the claimant submits a written claim to the Treasurer or a designee of the Treasurer

within 1 year after the injury to person or property that is the basis of the claim[.]"  Moreover,

the Treasurer has promulgated regulations that "explicitly spell[] out who is—and who is not—a 'Treasurer's designee' for purposes of accepting notice of tort claims under the MTCA." *Barbre v. Pope*, 402 Md. 157, 168, 935 A.2d 699, 706 (2007). Pursuant to the Code of Maryland Regulations ("COMAR") 25.02.01.02.B(7)(a), "'Treasurer's designee' means only the: (i) Chief Deputy Treasurer; or (ii) Director of the Insurance Division of the State Treasurer's Office."

The notice requirement is intended to "afford[ ] the State the opportunity to investigate the claims while the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time." *Haupt*, 340 Md. at 470, 667 A.2d at 183. Courts are not permitted to "entertain claims by claimants who fail to exhaust their administrative remedies before the Treasurer." *Chinwuba v. Larsen*, 142 Md. App. 327, 354, 790 A.2d 83, 98 (2002), *rev'd in part on other grounds*, 377 Md. 92, 832 A.2d 193 (2003).

It was unclear from the parties' initial filings why they believed that the MTCA applies in this case, given that plaintiff's suit does not include traditional tort claims. Accordingly, I asked the parties to submit supplemental briefings addressing whether the MTCA applies to plaintiff's proposed claim for employment discrimination under State law. *See* ECF 18 (Order of October 30, 2015). The parties responded. *See* ECF 19 (Defendants' Memo); ECF 20 (Plaintiff's Memo).

Defendants have advanced sound arguments regarding why the MTCA applies to this case, which alleges employment discrimination. They posit that "this Court may look to similar cases brought under a comparable statute, the Local Government Tort Claims Act" ("LGTCA"), Md. Code (2013 Repl. Vol.), Cts. & Jud. Proc. ("C.J.") § 5-301, *et seq.*, "which contains a similar notice requirement." ECF 19 at 1, Defendants' Memo.

The Maryland General Assembly enacted both the LGTCA and the MTCA to provide a remedy for an individual tortiously injured either by a local government or the State. *Proctor v. Washington Metro. Area Transit Auth.*, 412 Md. 691, 710–11, 990 A.2d 1048, 1059 (2010) ("The purpose of the MTCA is to ensure that an individual who is injured by the tortious conduct of the State or state employees has a remedy for his or her injury."); *Mitchell*, *supra,* 200 Md. App. at 189–90, 26 A.3d at 1020 ("The purpose of the LGTCA is to provide a remedy for those injured by local government officers and employees acting without malice and in the scope of employment."); *see also Holloway-Johnson v. Beall*, 220 Md. App. 195, 208–209, 103 A.3d 720, 727–28 (2014); *Condon*, 332 Md. at 492; *Johnson v. Md. State Police*, 331 Md. 285, 287, 628 A.2d 162, 163 (1993).  Although the statutes are not identical, analysis of one statute informs analysis of the other.  Indeed, the Maryland Court of Appeals has drawn comparisons between the LGTCA and MTCA.  *See, e.g.*, *Espina v. Jackson*, 442 Md. 311, 324, 112 A.2d 442, 450 (2015) (drawing on analysis of the MTCA to find that the LGTCA "appears to encompass constitutional torts"); *Bd. of Educ. of Prince George's Cnty. v. Mark-Sloan*, 428 Md. 1, 29–30, 50 A.3d 1137, 1154–55 (2012) (using both statutes for guidance to interpret Maryland law governing county boards of education); *see also Heron v. Strader*, 361 Md. 258, 263, 761 A.2d 56, 58–59 (2000).

The LGTCA provides that claims against local government defendants "may not be brought . . . unless the notice of the claim required . . . is given within 1 year after the injury." C.J. § 5-304(b)(1).  The notice "shall be given in person or by certified mail," C.J. § 5-304(c)(1), and shall be provided to specific county officials, which vary based on location.[5]  C.J. § 5-

---

[5] C.J. § 5-304(c) provides the following regarding who must receive notice:

(2) Except as otherwise provided, if the defendant local government is a county, the notice required under this section shall be given to the county commissioners

304(c)(2)–(3).   The LGTCA also provides:   "Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given."   C.J. § 5-304(d).

Defendants cite *Hansen v. City of Laurel*, 420 Md. 670, 25 A.3d 122 (2011), involving the LGTCA, in support of their position that the notice requirement of the MTCA applies to an employment discrimination claim.   In *Hansen*, the Maryland Court of Appeals stated that the notice requirement in the 2007 version of the LGTCA applied in a suit that "advanced theories of recovery based on age and disability discrimination under state and local laws prohibiting same."[6]   *Hansen*, 420 Md. at 674, 25 A.3d at 124 n.3; *see also* ECF 19 at 2.

Hansen had worked for the City of Laurel in Prince George's County, Maryland.   He filed suit, alleging that he was unlawfully terminated for health reasons.   420 Md. at 673, 25 A.3d at 124.   The defendant moved to dismiss, arguing that plaintiff did not satisfy the notice requirements of the LGTCA, nor did he allege in his suit that he had done so.   *Id.* at 674, 25 A.3d at 125.   Plaintiff's opposition to the motion included exhibits that reflected notice to the City Administrator and a "Charge of Discrimination" filed with the Prince George's County Human Relations Commission, which was later sent to the County Administrator.   *Id.* at 675, 25 A.3d at 125.   The document reflected an intent to file claims with the local and federal agencies but did

---

or county council of the defendant local government. (3) If the defendant local government is: (i) Baltimore City, the notice shall be given to the City Solicitor; (ii) Howard County or Montgomery County, the notice shall be given to the County Executive; and (iii) Anne Arundel County, Baltimore County, Harford County, or Prince George's County, the notice shall be given to the county solicitor or county attorney.  (4) For any other local government, the notice shall be given to the corporate authorities of the defendant local government.

[6] The opinion of the Maryland Court of Special Appeals indicates that the plaintiff in *Hansen* lodged claims for age and disability discrimination under the Prince George's County Code.  *See* 193 Md. App. 80, 84, 996 A.2d 882, 885 (2010).

not expressly indicate an intention to file suit.  *Id.*  In response, the defendant argued, *inter alia*, that the LGTCA required notice to the City Attorney, not the City Administrator.  *Id.* at 675–76, 25 A.3d at 126.

The Maryland Court of Appeals upheld the trial court's dismissal of the suit, because the plaintiff failed to plead in his complaint that he satisfied the provisions of the LGTCA.  *Id.* at 694, 25 A.3d at 137.  It said, *id.*:  "A plaintiff must not only satisfy the notice requirement strictly or substantially, but also plead such satisfaction in his/her complaint."  For the purpose of this case, however, *Hansen* is noteworthy because the Maryland Court of Appeals regarded the notice provisions of the LGTCA as applicable to the suit, which alleged employment discrimination.

Thus, defendants aver that, in the context of the LGTCA, the Maryland Court of Appeals has broadly defined the "term 'tort' and 'tortious acts or omissions.'"  ECF 19 at 2, Defendants' Memo.  According to defendants, the Maryland Court of Appeals has indicated that "the term 'tortious conduct' includes more than conduct that constituted a tort at common law."  ECF 19 at 3, Defendants' Memo (citing *Espina*, 442 Md. at 323–25, 112 A.3d at 449–50 and *Green v. N.B.S., Inc.*, 409 Md. 528, 976 A.2d 279 (2009)) (some internal quotations omitted).  Although defendants acknowledge that the MTCA and LGTCA are "not *identical*" (ECF 19 at 2, Defendants' Memo) (emphasis in original), they contend "the Court may rule the MTCA's notice requirement applicable to Plaintiff's proposed MFEPA claims . . . ."  ECF 19 at 3, Defendants' Memo.

Although plaintiff previously believed that she *was* subject to the MTCA's notice requirement (S.G. §§ 12-106, 12-107), and took steps to comply with it (*see, e.g.*, ECF 12-3, Letter to Treasurer), she now asserts that "proper authority exists for the Court to find that the

MTCA notice requirement does not apply to Maryland employment discrimination claims." ECF 20 at 2.  Plaintiff relies largely on *Roberts v. Office of the Sheriff for Charles Cnty.*, DKC-10-3359, 2012 WL 12762 (D. Md. 2012), in which Judge Chasanow found the MTCA inapplicable in MFEPA cases. *Id.* at *11; *see also* ECF 20 at 1–2, Plaintiff's Memo.  Plaintiff cites language from *Roberts*, observing that the MFEPA and MTCA do not contain any "cross-reference[.]" ECF 20 at 2, Plaintiff's Memo.  Plaintiff also contends that, "under well-established Maryland law, employment discrimination is not a tort."  *Id.*  Moreover, plaintiff notes that "although Court's [sic] have applied Maryland's [LGTCA] to employment discrimination claims, the LGTCA only applies to local governments." *Id.*

A federal court sitting in diversity must apply the law of the state in which the court is located. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).  In doing so, the federal court may defer to the interpretation of state law provided by a state's high court.  *See, e.g., Ill. Cent. R.R. Co. v. Minnesota*, 309 U.S. 157, 165 (1940) (observing that, when determining the meaning of a state statute, "on such matters of construction we defer to the state court's interpretation"); *Storaasil v. Minnesota*, 283 U.S. 57, 62 (1931) (noting that although the Court could "decide[] for itself" whether a contested state tax affected constitutional rights, the Court was "bound by the state court's decision as to the meaning and application of the law"); *Bd. of Dirs. of Chicago Theological Seminary v. People of State of Ill.*, 188 U.S. 662, 674–75 (1903) (providing that although neither of two dueling interpretations of state law was "clearly erroneous . . . . the decision of the state court is entitled to exercise marked influence upon the question [the Court was] called upon to decide, and where it cannot be said that the [state court's] decision is in itself unreasonable or in violation of the plain language of the statute, [the Court] ought, in cases

engendering a fair doubt, to follow the state court in its interpretation of the statutes of its own state"); 19 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4507 at 126–130 (2d ed. 1996) (observing that "the federal court must determine issues of state law as it believes the highest court of the state would determine them").

In *Roberts*, DKC-10-3359, 2012 WL 12762, the court did not discuss the Maryland Court of Appeals's decision in *Hansen*, 420 Md. 670, 25 A.3d 122. Based on *Hansen*, I am satisfied that the notice requirement of the MTCA is applicable to an employment discrimination claim against the State. Therefore, I turn to consider whether plaintiff satisfied the MTCA's notice requirement.

### a. MTCA Notice Requirement

As noted, under S.G. § 12-106(b)(1), "a claimant may not institute an action . . . unless . . . the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim[.]" Until recently, substantial compliance with the notice requirement was not sufficient as to actions subject to the MTCA. *See Barbre*, *supra*, 402 Md. at 178–180, 935 A.2d at 711–12 (2007) (and cases cited therein). Instead, the doctrine of substantial compliance applied only to actions brought pursuant to the LGTCA. *See* C.J. § 5-304(d); *Rios v. Montgomery Cnty.*, 386 Md. 104, 140–45, 872 A.2d 1, 22–25 (2005).

In 2015, however, the Maryland General Assembly amended the MTCA to permit substantial compliance consistent with the LGTCA. But, of import here, the amendment applies only to claims accruing on or after October 1, 2015. *See* 2015 Maryland Laws Ch. 132 (H.B. 114) (amending S.G. § 12-106(c)). Under the amendment, S.G. § 12-106(c) provides that, "on motion by a claimant and for good cause shown, [a] court may entertain an action [absent written

notice to the Treasurer] . . . unless the State can affirmatively show that its defense has been prejudiced by the claimant's failure to submit the claim." S.G. § 12-106(c). This provision is largely similar to that which permits substantial compliance under the LGTCA. Additionally, pursuant to S.G. § 12-107, once a written claim is filed, the Treasurer may deny the claim with a written notice of denial. If the Treasurer does not provide notice of denial within six months of receiving the claim, a claimant may proceed with a suit against the State. S.G. § 12-107(d)(1)–(2).

*Simpson v. Moore*, *supra*, 323 Md. at 228–29, 592 A.2d at 1096, is informative with respect to the notice requirement under the MTCA as it existed prior to October 2015. *Simpson* included a wrongful death claim against the State of Maryland and two individuals as a result of a helicopter crash that killed the plaintiff's wife. *Id.* at 217, 592 A.2d at 1091. The State argued that the MTCA's notice provision constituted a jurisdictional requirement and that dismissal of plaintiff's suit was proper because notice was untimely. *Id.* at 219–20, 592 A.2d at 1092. The plaintiff claimed that although the MTCA did not provide an exception to the notice deadline in its plain language, the LGTCA's substantial compliance provision applied in the MTCA context. According to the plaintiff, the Maryland "legislature intended to engraft upon the MTCA a notice provision identical" to the LGTCA's notice provision, and that under such an interpretation he would "be able to qualify under the 'good cause' and 'absence of prejudice' criteria established by [the LGTCA]." 323 Md. at 220, 592 A.2d at 1092 (alterations added).

The Maryland Court of Appeals rejected the plaintiff's interpretation of the MTCA as it was then written. *Id.* at 228–29, 592 A.2d at 1096. It stated: "The legislature could have, if it wished, tracked the exception provision of [the LGTCA] in amending the MTCA. For whatever reason, it did not do so, and we are not free to judicially place in the statute an entire section of

language which is not there."  323 Md. at 225, 592 A.2d at 1095.  As such, the court upheld

dismissal of the claims that were subject to the MTCA notice requirement, stating:  "In the

absence of statutory authority to excuse the late filing, the claim against the State must fail. The

doctrine of substantial compliance has no application to an outright failure to comply, and

compliance in this case was a condition precedent to the maintenance of a claim against the

State.[]"  323 Md. at 228–29, 592 A.2d at 1096.

Plaintiff has not complied with the MTCA's notice requirement.  And, even assuming the

recent amendment is applicable to plaintiff, she has not substantially complied with the MTCA's

notice requirement.

### b. Actual Compliance

As indicated, "to comply with the MTCA, a plaintiff must serve written notice upon the

State Treasurer, or a designee of the State Treasurer, within one year following the injury."

*Barbre*, 402 Md. at 176, 935 A.2d at 710; *see also* S.G. § 12-106(b)(1).  Additionally,

"'Treasurer's designee' means only the: (i) Chief Deputy Treasurer; or (ii) Director of the

Insurance Division of the State Treasurer's Office." COMAR, 25.02.01.02.B(7)(a).  This

designation "does not mean or include any other person, including, but not limited to: (i) An

officer or employee of State government other than those persons identified [as 'Treasurer's

designee'] above; (ii) The Comptroller of the Treasury, the Attorney General, or the Secretary of

State; or (iii) A commercial insurer, adjuster, claims administrator, or similar person who

provides services to the Treasurer as an independent contractor."  *Id.*

Plaintiff alleges employment discrimination dating to 2013.  ECF 5 at 2, Amended

Complaint; ECF 12-1 at 3, Proposed Second Amended Complaint.  Royster alleges that, as early

as March 2013, she "complained" to leadership in the Sheriff's Office "about a hostile work

environment." ECF 5 at 3–4, ¶¶ 28, 29; ECF 12-1 at 3, ¶¶ 28, 29.  The Amended Complaint and the Proposed Second Amended Complaint include several identical references to alleged discrimination that occurred prior to August 27, 2014.  *See, e.g.*, ECF 12-1, ¶¶ 39, 59, 62, 65, 90; ECF 5, ¶¶ 39, 59, 62, 65, 90.  As indicated, plaintiff provided notice to the Maryland Treasurer by letter of August 27, 2015.  *See* ECF 12-3.  Therefore, as to any alleged injuries that occurred prior to August 27, 2014, plaintiff's notice was not timely under S.G. § 12-106(b)(1).  Indeed, plaintiff appears to concede that she did not meet the requirement for actual notice.  ECF 15 at 2, Reply-Motion to Amend (noting only that plaintiff substantially complied).

Regarding the discrimination that allegedly occurred *after* August 27, 2014, the notice itself was timely, in that it was filed within one year of the alleged injury.  But, under the statute, the Treasurer has six months to respond to a claimant.  Pursuant to S.G. § 12-106(b), "a claimant may not institute an action under this subtitle unless . . . the Treasurer or designee denies the claim finally[.]"  Under S.G. § 12-107(d)(1)–(2), "[a] claim . . . is denied finally: (1) if, by certified mail . . . the Treasurer or designee sends the claimant . . . written notice of denial; or (2) if the Treasurer or designee fails to give notice of a final decision within 6 months after the filing of the claim."  Plaintiff did not provide notice to the Treasurer before she filed suit.  Rather, she provided notice on August 27, 2015, more than two months after suit was filed.  ECF 12-3, Letter to Treasurer.  Yet, the six-month deadline does not expire until February 27, 2016.  Therefore, the "October 2014 non-promotion" claim for which plaintiff gave timely notice to the Treasurer is not ripe for legal action.

### c.  Substantial Compliance

Plaintiff contends that she "substantially complied with the notice requirement" (ECF 15 at 2, Reply-Motion to Amend), and that she is "entitled to amend [her] complaint because

19

defendant will not be prejudiced." ECF 12 at 3, Motion to Amend. In my view, plaintiff has failed to substantially comply with the notice requirement of S.G. § 12-106(b)(1).

As noted, until recently the doctrine of substantial compliance was explicitly available only under the LGTCA, not the MTCA. Moreover, courts have "narrowly construed" the doctrine. *See, e.g.*, *McDaniel v. Maryland*, RDB-10-0189, 2010 WL 3260007, *4 (D. Md. 2010); *see also Barbre*, 402 Md. at 178–180, 935 A.2d at 711–12.

For example, in *McDaniel*, RDB-10-0189, 2010 WL 3260007, the plaintiff filed suit against the State of Maryland, two State transportation entities, and two Maryland police officers, alleging constitutional and common law violations during a traffic stop. *Id.* at *1. McDaniel filed suit nearly three years after the incident, and defendants moved to dismiss, arguing that McDaniel failed to comply with the MTCA because he "never served notice of the lawsuit on the State Treasurer or any of its designees." *Id.* at *4. Indeed, McDaniel conceded he had not given notice to the Treasurer, but argued that he had substantially complied with the MTCA because he had served the Maryland Attorney General. *Id.* Judge Bennett disagreed, stating that "it is well settled that service on the Attorney General does not provide the requisite notice" and that "[t]here is a 'longstanding principle under Maryland law that the failure to meet a condition precedent [to suit] extinguishes the right itself [to bring a claim].'" *Id.* (citations omitted and alteration in original); *see also Chinwuba*, 142 Md. App. at 356, 790 A.2d at 99 (finding notice to the Maryland Attorney General insufficient and observing that the requirement for "[n]otice to the Treasurer serves important public purposes").

The case of *Barbre v. Pope*, *supra*, 402 Md. at 162, 935 A.2d at 702, is also instructive. Pope filed suit against Queen Anne's County, Maryland, and a Deputy Sheriff who shot him in the neck in March 2004. *Id.* at 163–64, 935 A.2d at 702–03. Five months after the incident, in

August 2004, Pope's attorney sent a certified letter to a Queen Anne's County Commissioner, noting that the letter was intended to "constitute the requisite 180-day notice" under the LGTCA. *Id.* at 163, 935 A.2d at 703 (quotations omitted).  After suit was filed, the defendants argued that the Deputy Sheriff was a State officer, and therefore he was covered by the MTCA, rather than the LGTCA.  *Id.* at 165, 935 A.2d at 704.  Further, the defendants averred that Pope failed to comply with the MTCA notice requirement because notice was not sent to the Treasurer within a year of the occurrence.  *Id.*  In response, Pope insisted that filing notice was "not a condition precedent to bringing an action against an individual State employee," but that even if it was, "he substantially complied with the MTCA because he supplemented his notice to the State Treasurer on May 13, 2005, and the State was not prejudiced by the delay because the State had had notice of the incident as a result of an investigation undertaken by the State Police and the State's Attorney . . . ." *Id.* at 177–78, 935 A.2d at 705 (quotations and citations omitted).

The *Barbre* Court stated: "Pope expressly failed to meet the notice requirements of the MTCA when he only provided written notice to the State Treasurer. . . fourteen months after the injury[.]"  *Id.* at 179, 935 A.2d at 711.  In addition, the court determined that Pope's reliance on the supplemented notice to the Treasurer in May 2005 was misplaced.  It said, *id.* at 177, 935 A.2d at 711 n.16 (citation omitted):

> Pope appear[ed] to argue that the notice provided to the State Treasurer on May 13, 2005, after the one year time period had lapsed, "related back" to the notice he provided to the County. The MTCA notice provision, however, is "'a condition precedent to the initiation of an action under the [MTCA]'" which must be met, "as opposed to a statute of limitations" for which "relation back" may apply.

Moreover, the Maryland Court of Appeals concluded that "Pope's notice to a Queen Anne's County Commissioner did not expressly or substantially comply with the MTCA notice requirement."  *Id.* at 171, 935 A.2d at 707.  Based on the *Barbre* Court's review of earlier cases,

it reasoned: "If neither the Comptroller, nor the Attorney General, nor any other State officer, nor an 'insurer . . . who provides services to the Treasurer as an independent contractor' qualifies as a Treasurer's designee, then neither does a county officer such as a county commissioner." 402 Md. at 181, 935 A.2d at 713 (citations and quotations omitted).

*Johnson v. Md. State Police*, *supra*, 331 Md. 285, 628 A.2d 162, also provides guidance. The *Johnson* plaintiffs, who were minors at the time of injury, argued that the MTCA notice deadline "was tolled during [their] minority," under C.J. § 5-201, but that, in any event, they had substantially complied with the notice requirement because "the State created several reports of the accident, . . . interviewed the plaintiffs immediately after the accident, and . . . unsuccessfully prosecuted Johnson for an alleged traffic violation." 331 Md. at 291, 628 A.2d at 165.

The Maryland Court of Appeals disagreed. It stated that the MTCA's "administrative claim requirement is not a statute of limitations. Instead, it is a 'condition precedent to the initiation of an action under the Act.'" *Id.* at 290, 628 A.2d at 164 (citation omitted). As such, the court regarded tolling as inapplicable. *Id.* Further, the court noted that the "plaintiffs' argument confuse[d] 'substantial compliance' with 'lack of prejudice.'" *Id.* (citation omitted). And, it noted that the plaintiffs did not "undertake in any way to provide the State with notice of their claim[.]" 331 Md. at 291, 628 A.2d at 165. In the court's view, the plaintiffs "rel[ied] solely on the State's own efforts in acquiring information about the incident." *Id.* at 291–92, 628 A.2d at 165. Of relevance here, the court said that, even if substantial compliance were applicable, "substantial compliance requires more than a mere lack of prejudice to the State." *Id.* at 292, 628 A.2d at 165.

In this case, plaintiff maintains that she "substantially complied with the notice requirement by sending the defendant two letters" and that she "certainly put Defendant on

notice by filing a complaint with the EEOC." ECF 15 at 2, Reply-Motion to Amend. I am unpersuaded. The letters sent by plaintiff to the Sheriff's Office bear no more weight than the letters sent to the Maryland Attorney General in *McDaniel* or to the county commissioner in *Barbre*. The Sheriff's Office is not a sufficient substitute for the Treasurer. Put another way, sheriffs "are not on the Treasurer's short list of two designees (*i.e.* the Chief Deputy Treasurer and the Director of the Insurance Division of the State Treasurer's Office), both of whom work within the State Treasurer's Office." *Barbre*, 402 Md. at 168, 935 A.2d at 706. Moreover, plaintiff's notice to the EEOC is clearly not sufficient to constitute substantial compliance, as the EEOC is not associated with the State in any way.

Plaintiff does not clearly articulate whether the Letter to Treasurer should be interpreted to constitute substantial compliance for alleged injuries arising before August 27, 2014. But, it is clear that the one-year deadline could not be extended to include injuries that occurred prior to August 27, 2014. The deadline for filing notice to the Treasurer is a condition precedent to filing suit, not a statute of limitations that might be subject to tolling. *Barbre*, 402 Md. at 176, 935 A.2d at 711; *Johnson*, 331 Md. at 290, 628 A.2d at 164; *Simpson*, 323 Md. at 228–29, 592 A.2d at 1096.

Even assuming, *arguendo*, that the recent amendment to the MTCA applies in this case, permitting substantial compliance (*see* S.G. § 12-106(c)), plaintiff has not advanced any argument to suggest she has substantially complied or that she had good cause for deviating from the requirements contained in S.G. § 12-106(b)(1). And, despite plaintiff's claim that the "defendant will not be prejudiced" by the proposed amended complaint (ECF 12 at 3, Motion to Amend), "substantial compliance requires more than a mere lack of prejudice to the State." *Johnson*, 331 Md. at 292, 628 A.2d at 165.

Finally, in her Reply-Motion to Amend, plaintiff states that "if this Court were to decide that Plaintiff did not comply with the notice requirement, it should stay the case until the Treasurer has fully denied the claim or six months have elapsed." ECF 15 at 2, Reply-Motion to Amend. Plaintiff further noted that a stay "would serve the interests of justice and promote the conversation [sic] of judicial resources[.]" *Id.* at 2–3. In their Reply, defendants contend that "there is no basis to stay this action until such time as the six month period in the Maryland Tort Claims Act has elapsed and the court *may* have subject matter jurisdiction over Plaintiff's proposed MFEPA claims." ECF 16 at 6, Reply. Defendants also aver that "Plaintiff cites no authority for the proposition that the Court should continue to entertain claims when it currently does not have subject matter jurisdiction, but may in the future." ECF 16 at 6–7, Reply.

Notably, no motion to stay has been filed. But, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254–255 (1936); *see also United States v. Ga. Pacific Corp.*, 562 F.2d 294, 296 (4th Cir. 1977) ("The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.").

These interests include "the length of the requested stay, the hardship that that [sic] the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative litigation." *In re Mut. Funds Litigation*, JFM-04-1274, 2011 WL 3819608, *1 (D. Md. 2011).

I am not convinced that plaintiff has advanced arguments meriting a stay in this case. Indeed, little support was offered to support granting a stay. I see no basis to delay this case while awaiting an uncertain outcome in a state administrative process. Accordingly, I decline to stay the case pending the Treasurer's review, and I shall deny plaintiff's Motion to Amend (ECF 12). I turn to the Motion to Dismiss.

### B. Motion to Dismiss

### 1. Standard of Review

A defendant may test the sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S.Ct. 346, 346 (2014) (per curiam). But, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal

requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.  In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Simmons*, 634 F.3d at 768.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S.Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010).  However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient.  *Twombly*, 550 U.S. at 555.  Moreover, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385–86.

A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___U.S.___, 132 S.Ct. 1960 (2012).

A court's consideration of a Rule 12(b)(6) motion is generally confined to facts alleged in the operative pleading. A court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *overruled on other grounds, as recognized in Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015). However, a court may properly consider documents "attached or incorporated into the complaint," as well as documents attached to the defendant's motion, "so long as they are integral to the complaint and authentic." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

### 2. Contentions

In their Motion to Dismiss, defendants contend that both the State of Maryland and Sheriff Gahler, in his official capacity, enjoy Eleventh Amendment immunity with respect to suit under the ADEA. ECF 10-1 at 1, Motion to Dismiss. In addition, they assert that plaintiff has failed to state a claim.[7] *Id.*; *see also* ECF 10-1 at 7–17, Motion to Dismiss.

In particular, defendants argue that Sheriff Gahler, "in his official capacity," is "the equivalent of the State itself . . . ." ECF 10-1 at 1, Motion to Dismiss. Defendants further posit that Sheriff Gahler is a "State constitutional officer[.]" ECF 10-1 at 9, Motion to Dismiss. And, according to defendants, the State has not waived sovereign immunity with respect to the ADEA,

---

[7] In response to plaintiff's Motion to Amend, defendants also assert immunity under Maryland law. *See generally* ECF 13, Opposition to Amend. This issue was discussed, *supra*.

nor does the ADEA abrogate sovereign immunity of states.   ECF 10-1 at 7–8, Motion to

Dismiss.   Therefore, defendants maintain "that claims brought under the ADEA against the State

or its officials are barred by Eleventh Amendment immunity."   *Id.* at 8–9.

In her Opposition, plaintiff contends that defendants have overlooked that state officials,

sued in their official capacity, are not afforded Eleventh Amendment protection with respect to

claims for injunctive relief.   ECF 14-1 at 5–6, Opposition.   Plaintiff relies on *Ex Parte Young*,

209 U.S. 123 (1908), and its progeny.   *See* ECF 14-1 at 4–5, Opposition.

Defendants counter that "*Ex Parte Young* applies only to suits against State officials sued

in their *individual* capacities[.]"   ECF 16 at 2, Reply (emphasis in original).   They assert that the

*Ex Parte Young* "doctrine does not apply against the state itself or an official capacity claim

against a state official like Sheriff Gahler."   *Id.*

### 3. Immunity under the Eleventh Amendment

The Eleventh Amendment provides: "The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or subjects of any Foreign State."   In

effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the

state has waived its sovereign immunity or Congress has abrogated its immunity.   *See generally*

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011).

Sovereign immunity precludes a private individual from suing an unconsenting state or

an instrumentality of a state (also referred to as an "arm of the state") in federal court, absent

waiver or a valid Congressional abrogation of sovereign immunity. *See Coleman v. Court of*

*Appeals of Md.*, ___ U.S. ___, 132 S. Ct. 1327, 1333 (2012) ("A foundational premise of the

federal system is that States, as sovereigns, are immune from suits for damages, save as they

elect to waive that defense."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005). The preeminent purpose of state sovereign immunity is to accord states the dignity that is consistent with their status as sovereign entities. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).[8]

The Supreme Court has instructed that the test for determining whether a state has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985). Under *Atascadero*, courts may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* (internal quotation marks and alterations omitted); *see also Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 250–51 (4th Cir. 2012).

However, "*Ex Parte Young*, 209 U.S. 123 . . . created an exception to Eleventh Amendment immunity with respect to claims for prospective injunctive relief to remedy ongoing

---

[8] The issue of sovereign immunity is jurisdictional in nature, and thus is a question that a court may consider "'at any time, even *sua sponte*.'" *McCray*, 741 F.3d at 483 (quoting *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997)).

violations of federal law." *Hutto v. S.C. Retirement Sys.*, 773 F.3d 536, 542 (4th Cir. 2014).  The *Ex parte Young* doctrine is applicable in suits for declaratory and injunctive relief against individual state officers, in order to prevent ongoing violations of federal law.  *See generally Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997); *Bland*, 730 F.3d at 390; *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645 (internal quotations omitted).

Defendants argue that, given Sheriff Gahler's status as a State constitutional officer, he "enjoys Eleventh Amendment immunity" just as the State of Maryland does in this case.  ECF 10-1 at 9–10, Motion to Dismiss.  It is well settled that, under Maryland law, a sheriff is an officer of the state. *See Rucker v. Harford Cnty.*, 316 Md. 275, 281, 558 A.2d 399, 402 (1989). Judge Bennett recently discussed the history of this status in *Lane v. Anderson*, RDB-14-3739, 2015 WL 5136035, *5 (D. Md. 2015), *appeal docketed*, No. 15-2153 (4th Cir. Sept. 30, 2015) (bracket alterations and citations in original):

> Under Maryland law, sheriffs are elected state officials. Md. Const. art [sic] IV, § 44. This characterization of sheriffs as state, rather than local, officers is consistent throughout Maryland statutory and case law….

> As this Court has explained,

>> As a matter of Maryland law, the Sheriff and Deputy Sheriffs [of a Maryland County] are officials and/or employees of the State of Maryland rather than of [the] County. The role of a sheriff as a State constitutional officer whose duties are subject to control by the General Assembly leads us to the conclusion that sheriffs are State rather than local government employees.

*Willey v. Ward*, 197 F. Supp. 2d 384, 387–88 (D. Md. 2002) (quoting *Rucker v. Harford County*, 316 Md. 275, 558 A.2d 399, 402 (Md. 1989). The conclusion of *Willey* was not an anomaly, as this Court and Maryland's highest court have repeatedly held that sheriffs are *state* officers, and not local officers. *See McGrath–Malott v. Maryland*, Civ. A. No. RDB–06–879, 2007 WL 609909 (D. Md. Feb. 23, 2007); *see also Prince George's County v. Aluisi*, 354 Md. 422, 731 A.2d 888, 895 (Md. 1999) ("Sheriffs and deputy sheriffs are state officials, not local government officials, and their duties are determined by state law, not locally enacted ordinances."); *Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 651 (D. Md. 2004) (discussing *Rucker*, 558 A.2d at 399, and noting that "Maryland's highest court has previously engaged in a detailed analysis of Maryland's Constitution and Code to conclude that a sheriff and his deputies are not state employees."). The Maryland Code and case law thus reach the same conclusion: a sheriff . . . is a state officer.

The same analysis applies here.  Accordingly, defendants correctly assert that Sheriff Gahler is a State officer.  ECF 10-1 at 9–10, Motion to Dismiss.  However, the question remains as to whether Eleventh Amendment immunity may be afforded to both defendants.

### a. State of Maryland

Defendants correctly argue that the State of Maryland is immune from suit under the ADEA.  ECF 10-1 at 1, 7–8, Motion to Dismiss.  The State has not waived its immunity to claims filed under the ADEA, nor does the ADEA abrogate such immunity.  *McCray*, 741 F.3d at 483 (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–64 (2001) and *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 120 (2000)).  Accordingly, the State of Maryland is immune from plaintiff's ADEA claims.

All of plaintiff's federal claims are based on the ADEA:  discrimination, hostile work environment, and retaliation.  *See* ECF 5, ¶¶ 4, 145, 153, 176, 177.  *See also Baqir v. Principi*, 434 F.3d 733, 746 n.14 (4th Cir. 2006) (noting that the Fourth Circuit generally has assumed that claims for "age-based harassment" are cognizable under the ADEA as a hostile work environment claim), *cert. denied*, 549 U.S. 1051 (2006); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (addressing standard for hostile work environment claims

under the ADEA), *cert. denied*, 540 U.S. 940 (2003).  Because plaintiff's claims against the State

of Maryland are all predicated on the ADEA, they are barred by sovereign immunity.

### b. Sheriff Gahler

As noted, Sheriff Gahler contends that, in his official capacity, he is equivalent to the

State, and is thus protected by the immunity provided by the Eleventh Amendment.   In her

Opposition, plaintiff seems to concede that, under the Eleventh Amendment, she is barred from

the recovery of monetary relief from Gahler.   ECF 5 at 13; ECF 14-1 at 4, Opposition

("Defendant is only Immune to Monetary Damages under the Eleventh Amendment").

However, plaintiff also seeks injunctive relief from Gahler "in his official capacity," including

"promotion and the removal of all negative reviews from her personnel file[.]"   ECF 14-1 at 6,

Opposition; *see also* ECF 5 at 13 (including in the Prayer for Relief: "Remove all negative

reviews, restrictions, papers, from Plaintiff's personnel file.").

Defendants counter, ECF 16 at 2, Reply:

> *Ex Parte Young* applies only to suits against State officials sued in their *individual*
> capacities, and in this case, no such claims have been made.  *See Idaho v. Coeur
> d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997). The doctrine does not apply
> against the state itself or an official capacity claim against a state official like
> Sheriff Gahler. *See, e.g. Alabama v. Pugh*, 438 U.S. 781, 782 (per curium) [sic].

As the Supreme Court has noted, "the *Young* fiction is an exercise in line-drawing."

*Idaho*, 521 U.S. at 280.  Yet, according to the Court, its "precedents do teach us . . . that where

prospective relief is sought against individual state officers in a federal forum based on a federal

right, the Eleventh Amendment, in most cases, is not a bar." *Id.* at 276–77.  In *Frew ex rel. Frew

v. Hawkins*, 540 U.S. 431, 437 (2004), the Supreme Court said: "To ensure the enforcement of

federal law . . . the Eleventh Amendment permits suits for prospective injunctive relief against

state officials acting in violation of federal law."  (citing *Ex Parte Young*, 209 U.S. 123); *see also*

*Idaho*, 521 U.S. at 277 (recognizing that even though exceptions have been made where legislatures "provide an alternative review mechanism[,]" the Supreme Court has "consistently allowed suits seeking prospective injunctive relief based on federal violations to proceed"); *Bland*, 730 F.3d at 390 (noting that plaintiffs were "correct" in arguing "that Eleventh Amendment immunity does not apply to claims against the [Virginia] Sheriff in his *official capacity* because Plaintiffs' requests for reinstatement and lost pay are equitable claims to which immunity does not apply") (emphasis added); 17A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4232 (3d ed. 2007) ("The basic doctrine of Ex Parte Young[] can be simply stated.  A federal court is not barred by the Eleventh Amendment from *enjoining state officers*[] from acting unconstitutionally, either because their action is alleged to violate the Constitution directly or because it is contrary to a federal statute or regulation that is the supreme law of the land.[]") (emphasis added).

The Fourth Circuit's decision in *Bland v. Roberts*, *supra*, 730 F.3d 368, is informative. The plaintiffs in *Bland* filed suit against the Sheriff of the City of Hampton, Virginia, individually and in his official capacity.  *Id.* at 368.  On appeal to the Fourth Circuit, plaintiffs argued that "the District Court erred in ruling that Eleventh Amendment immunity would bar claims advanced against the Sheriff *in his official capacity*."  *Id.* at 389 (emphasis added).  The Fourth Circuit agreed, "to the extent that the Plaintiffs [sought] the remedy of reinstatement," because reinstatement is a claim for injunctive relief.   *Id.*   The Court explained, *id.* at 390 (citations omitted):

> [The *Ex Parte Young*] exception "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment.". . . . Because reinstatement is a form of prospective relief, the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex Parte Young* exception applies.

Accordingly, Sheriff Gahler is not protected by Eleventh Amendment immunity insofar as plaintiff's claims against him seek "prospective, injunctive relief." *Bland*, 730 F.3d at 390.

### 4. Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)

Defendants also contend that plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6).  ECF 10-1 at 10–17, Motion to Dismiss.  Defendants address each of plaintiff's claims under the ADEA, and allege that "all claims fail to state a claim on the merits." *Id.* at 10.  Given my ruling as to the State, I need only address this contention as to Sheriff Gahler. In my view, plaintiff has stated a claim for prospective injunctive relief under Rule 12(b)(6) for two of her three claims under the ADEA.

### a. Age Discrimination

In Count I, plaintiff claims age discrimination, in violation of the ADEA.  Defendants contend that the "Amended Complaint does not contain sufficient allegations to establish an adverse employment action" (ECF 10-1 at 11, Motion to Dismiss) and that "'shifting job responsibilities' that amount to a 'mere inconvenience or an alteration' . . . are not materially adverse actions." *Id.* (citations omitted).  Defendants also assert that plaintiff has not provided sufficient allegations showing that "her pay was reduced, she was denied benefits, opportunity for promotion, or suffered humiliation or damage to her reputation." ECF 10-1 at 12, Motion to Dismiss.   Further, they aver that plaintiff "fails to adequately allege that she was replaced by someone of comparable qualifications outside of the protected class." *Id.*  According to plaintiff, defendants "ignore[] Plaintiff's allegations that she was transferred to a position with different job responsibilities and lower pay, while [a] younger employee . . . was given a promotion." ECF 14-1 at 7, Opposition.

"The ADEA broadly prohibits arbitrary discrimination in the workplace based on age." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120 (1985) (citing *Lorillard v. Pons*, 434 U.S. 575, 577 (1978)) (internal citation omitted); *see also McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357 (1995).   Advancing a claim of discrimination under the ADEA mirrors the requirements for pleading the same under Title VII.   *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311–12 (1996) ("In assessing claims of age discrimination brought under the ADEA, the Fourth Circuit, like others,[] has applied some variant  of the basic evidentiary framework set forth in [Title VII case law]. We have never had occasion to decide whether that application of the Title VII rule to the ADEA context is correct, but since the parties do not contest that point, we shall assume it."); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *accord McKennon*, 513 U.S. at 358.

To plead adequately a claim of employment discrimination under the ADEA, a plaintiff typically must allege: "(1) he is a member of a protected class—that is, 40 years or older; (2) he suffered an adverse employment action; (3) he was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or he was replaced by a substantially younger person." *Bodkin v. Town of Strasburg, Va.*, 386 F. App'x 411, 413–14 (4th Cir. 2010) (per curiam) (citations omitted).

At trial, an ADEA claim may be proven using circumstantial evidence "analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973) . . . ." *Bodkin*, 386 F. App'x at 413.   *See also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 n.5 (1981) (Title VII); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993) (ADEA); *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238–39 (4th

Cir. 1982) (ADEA). Ultimately, to succeed on an ADEA claim, the plaintiff "must prove . . . that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 168 (2009).

The Fourth Circuit has explained that "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks, citation, and alterations omitted). "An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citation omitted). A mere "poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.' An evaluation merely causing a loss of prestige or status is not actionable." *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (internal citations omitted), *cert. denied*, 543 U.S. 959 (2004).

Although defendants contend that plaintiff "must establish" the four elements discussed above for her claim of employment discrimination (ECF 10-1 at 10, Motion to Dismiss), plaintiff is not required *to prove* anything at this point in the case. Indeed, she need not plead a *prima facie* case to defeat defendants' Motion to Dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, (2002). In *McCleary–Evans v. Md. Dep't of Transp.*, 780 F.3d 582 (4th Cir. 2015), the Fourth Circuit said, *id.* at 584–85:

> In *Swierkiewicz*, the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," 534 U.S. at 515, 122 S.Ct. 992, because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement," *id.* at

510, 122 S.Ct. 992, that may require demonstrating more elements than are otherwise required to state a claim for relief, *id.* at 511–12, 122 S.Ct. 992. The Court stated that requiring a plaintiff to plead a prima facie case would amount to a "heightened pleading standard" that would conflict with Federal Rule of Civil Procedure 8(a)(2). *Id.* at 512, 122 S.Ct. 992 . . . . Accordingly, the Court concluded that "the ordinary rules for assessing the sufficiency of a complaint apply," referring to Federal Rule of Civil Procedure 8(a)(2). *Id.*

Plaintiff alleges that she was born in 1970, which qualifies her as a member of the protected class under the ADEA. This satisfies the first element of an ADEA claim, as outlined above. Plaintiff has also advanced allegations relevant to the second element, suggesting that an adverse employment action may have occurred. She avers that "discriminatory treatment by Defendant toward Plaintiff caused" her "tangible harm" (ECF 5, ¶ 146), and that following her transfer to the detention center her responsibilities "completely changed[.]" ECF 5, ¶ 123. To illustrate, she claims that she "was no longer in the law enforcement side of the office" and was instead "on the corrections side[]" (ECF 5, ¶¶ 123–124), and rather was conducting "crime analysis work" she was responsible for "gather[ing] information from the detention center." ECF 5, ¶ 125. This suggests that plaintiff may have experienced a "significant change in employment status[.]" *Hoyle*, 650 F.3d at 337.

Additionally, plaintiff contends that her job performance met her "employer's legitimate expectations." *Bodkin*, 386 F. App'x at 413–414. For example, plaintiff avers that her supervisor informed her that he would "no longer do performance evaluations on her" (ECF 5, ¶ 13), noting: "'It was a waste of time because [she] was doing a great job.'" *Id.* ¶ 14. Moreover, plaintiff argues that her evaluations suggested she was "an excellent supervisor." *Id.* ¶ 22. This supports the third element required to state a claim of age discrimination.

In accordance with the fourth element outlined above, plaintiff contends that Mack, who was "in her mid-20's" (*id.* ¶ 41), did not have the experience required for the promotion she

received (*id.* ¶ 132), and that Mack received "higher pay" (*id.* ¶ 133), and a "higher pay grade." *Id.* ¶ 134.   Plaintiff also avers that "Defendant never even announced the position opening" for the managerial position Mack received, and "[h]ad Plaintiff know[n] about the position, Plaintiff would have applied." *Id.* ¶¶ 139–140.

Viewing these facts, *inter alia*, in the light most favorable to plaintiff, she has set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.   To be sure, the parties disagree about what transpired.   But, at this juncture, I must credit plaintiff's allegations.

### b. Retaliation

In Count III, plaintiff claims retaliation, in violation of the ADEA.   She asserts that her transfer to the detention center constituted an adverse employment action, and that a causal connection exists between her complaints to supervisors and her transfer.   ECF 16 at 2–5, Reply. Defendants contend that plaintiff has not shown that "she engaged in a protected activity" and that she "cannot establish . . . an adverse employment action was taken against her."   ECF 10-1 at 15, Motion to Dismiss.

As the Fourth Circuit has discussed, "[a]n employer violates the ADEA by retaliating against an employee for engaging in a protected activity." *Johnson v. Mechanics Farmers Bank*, 309 F. App'x 675, 684 (4th Cir. 2009) (citing 29 U.S.C. § 623(d)).   "Protected activity" is typically defined in the context of Title VII.   Courts have recognized substantial similarity between the anti-retaliation provision in Title VII and that in the ADEA, suggesting that the Title VII definition of "protected activity" is informative in the context of the ADEA.   *See*, *e.g.*, *EEOC v. Lockheed Martin Corp.*, 444 F. Supp. 2d 414, 417 (D. Md. 2006) (discussing the

similarities between the ADEA and Title VII anti-retaliation provisions). *See generally* 42 U.S.C. § 2000e–3(a) (providing Title VII's anti-retaliation provision); 29 U.S.C. § 623(d) (providing slightly varied language to prohibit retaliation under the ADEA). Thus, using the Title VII framework as a guide, "[a] protected activity is one in which the employee opposes an employment practice on the ground that it violates" anti-discrimination legislation. *Johnson v. Giant Food, Inc.*, JFM–00–3465, 2000 WL 1831962, *6 (D. Md. Nov. 27, 2000); *see Simmons v. Shalala*, 946 F. Supp. 415, 420 (D. Md. 1996).

"[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005), *cert. denied*, 547 U.S. 1041 (2006). The Fourth Circuit "has articulated an expansive view of what constitutes oppositional conduct, recognizing that it 'encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (citing *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). The Fourth Circuit has also found that the filing of an EEOC complaint generally constitutes protected activity. *See, e.g.*, *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003), *cert. denied*, 540 U.S. 1073 (2003); *see Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994); *Bickford v. Denmark Tech. Coll.*, 479 F. Supp. 2d 551, 568 (D.S.C. 2007) (noting, in the context of retaliation under Title VII and the ADEA, that "[a] plaintiff need not have filed a formal complaint with the [EEOC] or a state deferral agency to engage in a protected activity[]" and that "[c]omplaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity"). However,

"opposition activity is protected [only] when it responds to an employment practice that the employee *reasonably believes* is unlawful." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006) (emphasis in original); *see also DeMasters*, 796 F.3d at 417.

To state a claim of retaliation under the ADEA (as well as under Title VII), a plaintiff must satisfy three elements: "(1) the plaintiff engaged in a protected activity, (2) the employer took an adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action." *Johnson*, 309 F. App'x at 682 (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)); *see also Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, ___ U.S. ___, 132 S. Ct. 1327 (2012); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998).

Regarding the element of causation, ordinarily there must be "some degree of temporal proximity to suggest a causal connection." *Constantine*, 411 F.3d at 501. Therefore, a "'lengthy time lapse between the [defendant] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (citation omitted). *But see Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) ("In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'") (citation omitted).

Conversely, mere temporal proximity is not necessarily enough to create a jury issue as to causation. "'Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'" *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (citation omitted) (affirming summary judgment where the "actions that led to [plaintiff's]

40

probation and termination began before her protected activity, belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] complaints").

Defendants contend that plaintiff's retaliation claim is defective because plaintiff has failed to show any of the three required elements in her allegations.  ECF 10-1 at 14–17, Motion to Dismiss.  But, as required under the first element, plaintiff has advanced sufficient allegations to suggest that she engaged in protected activity by complaining about mistreatment to her supervisors and by filing a complaint with the EEOC.  *See, e.g.*, ECF 5, ¶¶ 28, 34, 178.  As to the second element, plaintiff asserts that, "in response to [her] hostile work environment complaints, [she] was transferred to a detention center" where her responsibilities "completely changed." ECF 5, ¶¶ 121, 123.  And, as to the third element of causation, plaintiff contends that her "protected activity was the cause of the Defendant's . . . actions."  ECF 5, ¶ 181; *see also Constantine*, 411 F.3d at 501.  As such, I am satisfied that plaintiff has stated a claim for retaliation.

### c. Hostile Work Environment

In Count II, plaintiff advances a claim for "hostile and abusive working environment," in violation of the ADEA. ECF 5 at 10–12.

Defendants assert that "the factual allegations in the Amended Complaint fail to establish a pervasive and severe work environment that resulted from Plaintiff's age." ECF 10-1 at 13, Motion to Dismiss.   In their Motion to Dismiss, defendants state that plaintiff "woefully failed to set forth facts to establish" the elements required for an age-based hostile work environment claim.  *Id*.  In particular, defendants argue that in the Amended Complaint "there are essentially *no facts* that relate to plaintiff's age at all." *Id.* at 13–14 (emphasis in original).

Plaintiff counters that she received "several derogatory comments" (ECF 14-1 at 8, Opposition) and she "reasonably believed that the derogatory comments were because of her age." *Id.* at 9. She posits that "just because these comments do not directly reference [her] age does not mean they are not based on her age." *Id.*

"[A] hostile work environment claim is available to individuals over the age of 40 under the ADEA." *Martin v. Scott & Stringfellow, Inc.*, 643 F. Supp. 2d 770, 786 (E.D. Va. 2009) (citing *Baqir*, 434 F.3d at 746 n.14 and *Graham v. Prince George's Cnty.*, 191 F. App'x 202, 204 (4th Cir. 2006)). According to the Fourth Circuit, to state a claim of hostile work environment under the ADEA, the plaintiff must allege: "(1) the harassment was unwelcome; (2) the harassment was based on [plaintiff's] . . . age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey*, 162 F.3d at 801 (discussing both Title VII and the ADEA); *see Wells v. Gates*, 336 F. App'x 378, 386–87 (4th Cir. 2009); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241–42 (4th. Cir. 2000) (discussing requirements for pleading hostile work environment in the context of sex discrimination); *Hartsell v. Suplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) (Title VII case).

In my view, plaintiff's hostile work environment claim does not satisfy the requirements of Rule 8(a)(2). Plaintiff asserts that she received "numerous derogatory comments" in the workplace (ECF 5, ¶ 24), such as being told she was "'having a hissy fit'" (ECF 5, ¶ 24), and being called a 'fat ass' by management." ECF 5, ¶ 25. Additionally, plaintiff alleges that she was "physically[] threatened" in one instance (ECF 5, ¶ 98), and that she was "screamed" and "lunged" at by management. ECF 5, ¶¶ 99, 100. She also claims that this treatment was "severe and pervasive" and "alter[ed] the conditions of her employment" (ECF 5, ¶ 165), and that the

treatment was "subjectively perceived by Plaintiff as abusive and unwelcome."  ECF, ¶ 168. Even assuming the truth of plaintiff's allegations, they are wholly insufficient to state a claim of hostile work environment based on age.

As defendants point out, plaintiff's Amended Complaint lacks any factual allegations showing the alleged comments pertained to plaintiff's age or that the alleged discriminatory treatment was based on plaintiff's age.  Rather, the claim is based on conjecture.  The only reference in the Amended Complaint to plaintiff's age as a possible basis for the hostile work environment is the following: "Similarly situated employees not of Plaintiff's age were not subjected to these conditions."  *See* ECF 5, ¶ 171, Amended Complaint.  This assertion, standing alone, is not sufficient to suggest that the offensive conduct was age-based.  Indeed, it provides no more than a bald conclusion that age had anything to do with what allegedly transpired.

As noted, to state a claim of hostile work environment, a plaintiff must allege that "harassment was based on [plaintiff's] . . . age."  *Causey*, 162 F.3d at 801.  An employee is harassed "based on" his age if, but for his age, he would not have been the victim of the discrimination.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. at 176 ("To establish a disparate-treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision.");  *Smith*, 202 F.3d at 242; *Hoyle*, 650 F.3d at 331.  But, "harassment due to personality conflicts will not suffice. Some persons, for reasons wholly unrelated to [age], manage to make themselves disliked."  *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008).

To be sure, plaintiff states in her Opposition (ECF 14) that she "reasonably believed that the derogatory comments were because of her age" (*id.* at 9), and that "just because these comments do not directly reference [her] age does not mean they are not based on her age."  *Id.*

However, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

In sum, Royster has merely asserted that she is over 40 years old and that she was subjected to unpleasant or offensive comments. Federal employment discrimination law does not serve as "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Even if plaintiff's work environment were "hostile," her Amended Complaint does not attribute the hostility to age-based animus.

Nevertheless, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *See Foman*, 371 U.S. at 182 (citation omitted). As a result, I shall grant plaintiff leave to submit a Second Amended Complaint as to the ADEA hostile work environment claim, limited to prospective injunctive relief, due within 21 days of the date of filing of this Memorandum Opinion.

## IV. Conclusion

For the foregoing reasons, I shall GRANT the Motion to Dismiss (ECF 10) as to the State of Maryland; I shall DENY the Motion to Dismiss (ECF 10) as to Sheriff Gahler as to claims for prospective injunctive relief in regard to Counts I and III, but otherwise grant the Motion as to Sheriff Gahler, with leave to file a Second Amended Complaint only as to a claim for prospective injunctive relief as to the ADEA hostile work environment claim (Count II). I shall also DENY the Motion to Amend (ECF 12).

A separate Order follows, consistent with this Memorandum.


Date: December 31, 2015                                   _____/s/_____

                                                         Ellen L. Hollander
                                                         United States District Judge